IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JARRETT DIXON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:21-cv-368-MTT-CHW |
| | : | |
| DEBORAH MAPP, | : | Proceedings under 42. U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendant. | : | |
| | : | |

## ORDER AND RECOMMENDATION

Before the Court are several motions, including cross motions for summary judgment (Docs. 71, 74, 79[1]) and Plaintiff's motion for reconsideration. (Doc. 64). Defendant Mapp filed a motion for summary judgment arguing that she is entitled to qualified immunity in her individual capacity because Plaintiff has shown no constitutional violations and because Plaintiff's claims against her in her official capacity are barred by the Eleventh Amendment. Plaintiff filed a motion for partial summary judgment asking that Defendant be found liable as a matter of law leaving only damages to be determined. Plaintiff also filed a motion for reconsideration of a previous court order. It is **RECOMMENDED** that Plaintiff's motion for reconsideration (Doc. 64) be **DENIED**. After considering the record and facts construed most favorably to the non-moving parties, it is also **RECOMMENDED** that Defendant's motion for summary judgment (Doc. 74) be **GRANTED** and that Plaintiff's motion for partial summary judgment (Doc. 71) be **DENIED**.

---

[1] Plaintiff filed a motion to amend his motion for partial summary judgment (Doc. 79). The substance of this motion appears to further support his original motion (Doc. 71) by attempting to cure a failure to cite the record in his statement of material facts, but the amendment does not substantively amend the grounds. Therefore, this motion (Doc. 79) is **GRANTED** to the extent it has been considered as support and as a part of Plaintiff's original motion for partial summary judgment.

1

### A. Plaintiff's Motion for Reconsideration

Plaintiff filed a motion for reconsideration and "political correctness" pursuant to Local Rule 7.6. (Doc. 64). Although it is unclear what motion he wishes the Court to reconsider, his request most likely concerns the denial of a motion for a writ of mandamus. (Doc. 53, 54). Plaintiff attempts to clarify what he wanted in his motion by outlining the types of damages he seeks in his lawsuit. These requests do not appear to be different from the claims and requests for relief already pending before the Court. Moreover, Plaintiff's motion offers no basis for relief under Rule 60(b) of the Federal Rules of Civil Procedure, and no such basis is apparent from the record. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for reconsideration and political correctness (Doc. 64) be **DENIED**.

### B. Cross Motions for Summary Judgment

#### RELEVANT FACTS

Plaintiff is an inmate in the custody of the Georgia Department of Corrections and is currently housed at Hays State Prison. (Doc. 74-1, ¶ 1). While Plaintiff was housed at Hancock State Prison (HSP), his state habeas corpus petition was denied on December 13, 2018, following a hearing on April 12, 2017. (*Id.*, ¶¶ 3-4; Doc. 74-3, p. 234-247). The order denying Plaintiff's state habeas petition explained the procedure that he must follow to appeal the judgment. (Doc. 74-3, p. 247). Plaintiff acknowledged these directions, but on December 21, 2018, he filed both his notice of appeal and application for a certificate of probable cause with the Hancock County Superior Court Clerk's Office instead of directly filing the latter with the Clerk of the Georgia Supreme Court. (Doc. 74-1, ¶ 8; *See* Doc. 74-3, Plaintiff's Deposition, p. 105-106 and Ex. 5). Realizing his error, Plaintiff filed his application for a certificate of probable cause with the Georgia Supreme Court on January 30, 2019. (Doc. 74-3, Ex. 6). Plaintiff's application for a

certificate of probable cause was denied as being untimely, as was his motion for reconsideration. (*Id*., Exs. 7-9).

In November 2019, while Plaintiff was housed at Georgia State Prison, Plaintiff learned that the court reporter for his state habeas hearing prepared and mailed the hearing transcript to him at HSP on March 1, 2018. (Doc. 74-3, Pl. Dep., p. 77 and Ex. 2, p. 207-215). Plaintiff alleges he received an email from the court reporter confirming that the transcript was delivered to HSP on March 5, 2018, but that the email was confiscated. (Docs. 74-1, ¶ 16; 74-3, Pl. Dep., p. 77). Plaintiff provided a letter from the court reporter with an attached receipt reflecting that she mailed the transcript on March 1, 2018, with an expected delivery date of March 5, 2018. (Doc. 71-16). The letter is silent regarding whether the transcript was actually delivered on March 5, 2018. *See* (*id*.)

Defendant was the mailroom officer at HSP in March 2018. (Doc. 74-1, ¶¶ 2, 14). When an inmate received legal mail, it was noted in a facility logbook. (*Id*. ¶ 15). If the inmate was housed in a lockdown unit, as Plaintiff was at the time, the mail and logbook would be taken to the inmate and opened in front of the inmate, and the inmate would sign the logbook. (*Id*., ¶15; Doc. 74-4, ¶ 6). Defendant provided the logbook page reflecting entries from March 2, 2018 until March 7, 2018. (Doc. 74-4, p. 10-11). No entry for Plaintiff is reflected for this time period. (*Id*.; Doc. 74-1, ¶ 18-19). Nothing in the record shows that Plaintiff's transcripts arrived at the prison or that Defendant ever had the transcripts in her possession. (Doc. 74-1, ¶¶ 19-20).

Plaintiff argues that Defendant failed to deliver his transcript in a timely manner and violated his rights to free speech and access to the courts, causing his appeal from the denial of his state habeas petition to be dismissed because he was unable to support his arguments with citations to the transcript. (Docs. 13, 15, 22). Following screening, these claims were permitted to move

forward for factual development. (Docs. 15, 22) No claims regarding Plaintiff's ability to litigate his federal habeas moved forward after the Court's screening order. *See (id.)*. Although Defendant has argued that she is entitled to summary judgment for any claim related to Plaintiff's federal habeas case (Doc. 74-2, p. 9-10), no such claim is pending before the Court.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Plaintiff attempted to comply with the Court's local rules and Federal Rules of Civil Procedure but failed to cite to the record for his original statement of material facts or specifically address each of Defendant's numbered material facts. Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2). This Court's Local Rule 56 similarly provides: "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." MDGA Local Rule 56. Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion and supporting materials—including the facts

considered undisputed—show that the movant is entitled to" summary judgment. Rule 56(e)(3). *See also Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Accordingly, because Defendant properly supported her factual assertions with specific citations to the record, and because Plaintiff failed to specifically refute them, the Defendant's facts may be accepted by the Court as undisputed.

## ANALYSIS

Both parties filed motions for summary judgment. In Plaintiff's motion for partial summary judgment, he restates the allegations in his complaint and urges the court to enter judgment as to liability because Defendant has not shown that his habeas hearing transcript did not arrive at HSP, thus leaving only the question of damages. The burden of proof is on Plaintiff, however, and Plaintiff has not produced evidence to show that Defendant Mapp interfered with his mail or acted in any way that denied his access to courts. Instead, the record, even when construed in Plaintiff's favor, demonstrates that Defendant is entitled to summary judgment.

1. <u>Defendant is entitled to qualified immunity as to Plaintiff's free speech and access to courts claims</u>.

Defendant requests summary judgment by arguing that she is protected from suit under qualified immunity. When considering whether summary judgment is appropriate based on qualified immunity, the Court "[draws] all inferences and [views] all of the evidence in the light most favorable to the nonmoving party." *Jones v. Michael*, 656 F. App'x 923, 925 (11th Cir. 2016) (internal quotations omitted). If "conflicts arise between the facts evidenced by the parties, [the Court] must credit the nonmoving party's version." *Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021).

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). Defendant "cannot obtain qualified immunity unless he establishes that he was acting within his discretionary authority." *Underwood*, 11 F.4th at 1328. It is undisputed that the handling inmate mail fell within Defendant's discretionary authority. *Al-Amin v. Smith*, 511 F.3d 1317, 1324 (11th Cir. 2008).

Once action under discretionary authority has been established, "the burden shifts to the plaintiff, who must show the officer is not entitled to qualified immunity." *Underwood*, 11 F.4th at 1328. "At this stage, [the Court asks] two questions: (1) 'whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) if so, 'whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct.'" *Id.* at 1328 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 232 (2009)). Both must be present to for a plaintiff to prevail. *Id.* Eleventh Circuit case law has made clear that mishandling or impeding inmate mail violates a clearly established right because doing so may implicate an inmate's rights to free speech or access to court. *See Mitchell v. Peoples*, 10 F.4th 1226, 1229-1230 (11th Cir. 2021) (discussing nearly 50 years of precedent beginning in *Taylor v. Sterrett*, 532 F.2d 462 (5th Cir. 1976) and affirmed in *Al-Amin*, 511 F.3d 1317). Defendant does not contest the clearly established prong of the qualified immunity analysis. *See* (Doc. 74-2, p. 6-11).

    a. <u>Violation of Free Speech Claim</u>

As recognized in the Court's screening order, an inmate's right to send and receive mail is a protected under an inmate's right to free speech. *See, e.g.*, *Oliver v. Warden*, 761 F. App'x 960, 963 (11th Cir. 2019) (citing *Al-Amin*, 511 F.3d at 1333). A claim that an inmate's free speech rights have been violated does not require a showing of actual injury. *Mitchell*, 10 F.4th at 1230 (quoting *Al-Amin*, 511 F.3d at 1334). However, the record does not show that Defendant

6

confiscated, refused to deliver, or diverted Plaintiff's mail; opened Plaintiff's mail outside his presence; or took any other action in violation of Plaintiff's free speech rights.

Plaintiff fervently believes that his state habeas corpus transcripts were delivered or arrived at HSP on March 5, 2018, but the record shows no evidence of delivery. Even if it did, there is no evidence that *Defendant* caused Plaintiff not to receive those transcripts or undertook any action that "'chill[ed], inhibit[ed], or interfere[ed] with' Plaintiff's speech or violated his free speech rights. *Mitchell*, 10 F.4th at 1231 (quoting *Al-Amin*, 511 F.3d at 1334). The best and most competent evidence, the mailroom logbook page for the relevant period, shows no record of Plaintiff's transcripts being processed by and into the mailroom. (Doc. 74-4, p, 10-11). Without evidence that the transcripts were received or that Defendant was involved the handling of that mail, Plaintiff's violation of free speech claim fails as a matter of law.

  b. <u>Violation of Access to Courts Claim</u>

Plaintiff claims that Defendant's failure to deliver his transcripts in March 2018 frustrated his ability to file an adequate application for a certificate of probable cause in his appeal of the denial of his state habeas petition. Before Plaintiff can establish that any such interference violated his right to access the courts, there must be a showing of an actual injury. *Mitchell*, 10 F.4th at 1230. Showing an actual injury "requires that [Defendant's] actions 'impeded the inmate's pursuit of a non-frivolous, post-conviction claim or civil rights action.'" *Id*. (quoting *Wilson v. Blakenship*, 163 F.3d 1284, 1290 (11th Cir. 1998)). Plaintiff's frustrated state habeas appeal is the type of injury required for his claim, but the record does not support, and Plaintiff cannot show, that lack of access to the transcript impeded the successful filing of his application for a certificate of probable cause.

Plaintiff has acknowledged that he received the order denying his state habeas petition and

7

that it explained the appellate procedure that he must undertake to challenge the outcome. The order explained that, within 30 days of the order, Plaintiff must file a notice of appeal with the Clerk of Superior Court of Hancock County *and* file an application for a certificate of probable cause with the Clerk of Georgia Supreme Court. (Doc. 74-3, p. 247). The order denying Plaintiff's state habeas petition was filed on December 13, 2018, and therefore, the deadline for the necessary appellate filings was January 14, 2019. O.C.G.A. § 1-3-1(d)(3). Plaintiff admits that the order explained the appellate procedure, but he had a "miscue" and filed both documents with the superior court clerk before realizing the error and submitting the application to the Georgia Supreme Court on January 30, 2019. (Doc. 74-3, Pl. Dep., p. 98-102, 106, 108-110 and Ex. 6, p. 253). Because Plaintiff's application for a certificate of probable cause was not received by the Clerk of the Georgia Supreme Court on or before January 14, 2019, it was dismissed as untimely. (Doc. 74-3, p. 257).

As discussed above, there is no evidence that the transcript arrived at HSP or that it was ever received or handled by Defendant. However, even if the transcript had been delivered, there is nothing in the record to show that Defendant's refusal or failure to deliver the transcript impeded Plaintiff's ability to file a *timely* application for a certificate of probable cause with the Clerk of the Georgia Supreme Court. Plaintiff argues that his inability to brief and support his application with citations to the transcript was the reason his appeal was unsuccessful, but a review of the record shows otherwise. Plaintiff's appeal was dismissed because he failed to file an application for a certificate of probable cause by January 14, 2019, not because the application was unsupported by specific citations to the record. Nothing Defendant is alleged to have done caused or could have prevented Plaintiff's misapprehension about where to file the necessary appellate documents. Instead, the record shows that Plaintiff's own confusion or misunderstanding about

8

Georgia's appellate procedure for habeas cases led to his unsuccessful bid to appeal his state habeas denial. Therefore, Plaintiff cannot demonstrate that any action by Defendant caused any actual injury necessary to prove a violation of access to courts claim.

Because the record, construed in the light most favorabley to Plaintiff, demonstrates that no constitutional violations occurred, Defendant is entitled to qualified immunity in this case.

2. <u>Plaintiff's claims for money damages are barred against Defendant in her official capacities under the Eleventh Amendment</u>.

To the extent that Plaintiff seeks to recover money damages against Defendant in her official capacity, such claims would be barred by the Eleventh Amendment and 42 U.S.C. § 1983. *See generally*, *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17. Defendant was employed by the Georgia Department of Corrections at Hancock State Prison when the incident underlying Plaintiff's claim occurred. The State of Georgia has not waived sovereign immunity, and § 1983 was not meant to abrogate a state's Eleventh Amendment or sovereign immunity; therefore Plaintiff is barred from suing Defendant in her official capacity for damages. Section 1983 itself also precludes any official-capacity claims against Defendant for nominal damages because the state is not a person for under the meaning of § 1983. *Moody v. City of Delray Beach*, 609 F. App'x 966, 967 (11th Cir. 2015) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)). Section 1983 provides no remedy for the Plaintiff against Defendant in her official capacity.

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that Plaintiff's motion to amend (Doc. 79) be **GRANTED** to the extent it acts to supplement his partial motion for summary judgment. It is hereby **RECOMMENDED** that Plaintiff's motion for reconsideration (Doc. 64) be **DENIED**, that Plaintiff's partial summary judgment (Doc. 71) be **DENIED**, and that Defendant's motion for summary judgment (Doc. 74) be **GRANTED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED**, this 11th day of January, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge